(February 23, 1887.)

## PALMER ET AL. v. UTAH AND NORTH RAILWAY COMPANY.

[13 Pac. 425.]

PLEADING—SPECIAL DEMURRER.—Defects in pleading which make them uncertain are special grounds of demurrer under our code, which cannot be taken advantage of on general demurrer.

IMPROPER CONDUCT OF PARTY—INFLUENCING JURY—GROUND FOR REVERSAL.—A judgment in favor of a party guilty of improper conduct calculated to influence the jury, or any juror, in their favor in rendering the verdict, should be reversed and a new trial granted on the ground of public policy.

RAILROAD CORPORATION—NEGLIGENCE—SERVANTS—FELLOW-SERVANTS.—A railroad corporation is liable for damages to employees injured through the negligence of their agents or servants who are invested with a controlling or superior duty in the management of the business of the corporation.

(Syllabus by the court.)

APPEAL from District Court, Bingham County.

P. L. Williams and Homer Stull, for Appellant.

To determine who is the proper party plaintiff, the complaint must show, by averment, whether the deceased was a minor or major, and the plaintiff must then be the person indicated by the statute. The essential facts in every case must be averred directly, and cannot be left to inference. (*Harris v. Hillagass,* 54 Cal. 463; *Stringer v. Davis,* 30 Cal. 318.) An employee in the bridge department of a railroad and a telegraphic operator are fellow-servants. (*Russell v. Railroad Co.,* 17 N. Y. 134; *Laning v. Railroad Co.,* 49 N. Y. 521, 10 Am. Rep. 417; *Wonder v. Railroad Co.,* 32 Md. 411, 3 Am. Rep. 143, and note; *Lawler v. Railroad Co.,* 62 Me. 463, 16 Am. Rep. 492, and note; *Seaver v. Railroad Co.,* 14 Gray, 466; *Gilman v. Railroad Corp.,* 10 Allen, 233, 87 Am. Dec. 635.) Misconduct of a suitor is sufficient to reverse a judgment. (*Rose v. Smith,* 4 Cow. 17, 15 Am. Dec. 331; *People v. Douglass,* 4 Cow. 26, 33, 15 Am. Dec. 332; *Hilton v. Southwick,* 17 Me. 303, 35 Am. Dec. 253, and note; *Brandt v. Fowler,* 7 Cow. 562; *Wilson v. Abrahams,* 1 Hill, 207;

*Jackson v. Smith,* 21 Wis. 26; *State v. Hartmann,* 46 Wis. 24b, 50 N. W. 193; *McIntire v. Hussey,* 57 Me. 493; *Phillipsburgh Bank v. Fulmer,* 31 N. J. L. 52, 86 Am. Dec. 193.)   The proof should have been confined to the defect alleged.   (*Batterson v. Railway Co.,* 49 Mich. 184, 13 N. W. 508; *Morse v. Railway Co.,* 30 Minn. 465, 16 N. W. 358.)

H. M. Bennett and Smith & Wright, for Respondents.

Where a defect of parties exists, the objection must be taken by demurrer, or it will be waived.   (*Dunn v. Tozer,* 10 Cal. 167; *Mott v. Smith,* 16 Cal. 557; *Sampson v. Schaeffer,* 3 Cal. 202; *Burroughs v. Lott,* 19 Cal. 125; *Barber v. Reynolds,* 33 Cal. 497.)   The fact that deceased was riding on a pass in no wise affects the question of defendant's liability.   (*Railroad Co. v. Derby,* 14 How. 483; *Ohio etc. Ry. Co. v. Selby,* 47 Ind. 492, 17 Am. Rep. 719; *Railroad Co. v. Muhling,* 30 Ill. 23; *The New World v. King,* 16 How. 472; *Railroad Co. v. Horst,* 93 U. S. 296; *Railroad Co. v. Lockwood,* 17 Wall. 374, 10 Am. Rep. 366, note.)   The deceased was killed by the negligence of either telegraph operator or train-dispatcher; both of them were agents of defendant, and were not "fellow-servants" of deceased, within the meaning of that term as used in law.   (*Gillenwater v. Railroad Co.,* 5 Ind. 339, 61 Am. Dec. 101; *Bowers v. Railroad Co.,* 4 Utah, 215, 7 Pac. 251; *Cunningham v. Railway Co.,* 4 Utah, 206, 7 Pac. 799; *Kielley v. Mining Co.,* 3 Saw. 437, Fed. Cas. No. 7760; *Chicago etc. R. R. Co. v. Morando,* 93 Ill. 302, 34 Am. Rep. 168; *Darrigan v. Railroad Co.,* 23 Am. & Eng. R. R. Cas. 438; *Railway Co. v. Ross,* 112 U. S. 377, 5 Sup. Ct. Rep. 184; *Railroad Co. v. Crockett,* 19 Neb. 139, 26 N. W. 921; *Chicago etc. R. Co. v. Lundstrom,* 16 Neb. 256, 49 Am. Rep. 718, 20 N. W. 198; *Railway Co. v. Condon,* 17 Am. & Eng. R. R. Cas. 583; *Railroad Co. v. Collins,* 5 Am. Law Reg., N. S., 266.)

BUCK, J.—On the eleventh day of December, 1885, the defendant, a corporation, was running a passenger train on its road, which was derailed, and thrown from the track, and one William O. Palmer, an employee of defendant, riding thereon at the time of the accident, was killed by a car falling upon him. It is claimed by plaintiffs that the accident was caused by a broken

rail which defendant carelessly and negligently allowed to be and remain on the track. The action was brought by Linnie M. Palmer, widow of deceased, and Alfred Perle Palmer, minor son of deceased, by W. F. Fisher, guardian of said minor. The defendant interposed a general demurrer to the complaint, on the usual ground, "that it does not state facts sufficient to constitute a cause of action."

That part of the complaint relied upon by attorneys for defendant in the argument of the demurrer is in the following words: "That the plaintiff Linnie M. Palmer is the widow of William O. Palmer, deceased, and that the plaintiff Alfred Perle Palmer is the son of Linnie M. Palmer and William O. Palmer, deceased; that Alfred Perle Palmer, one of the plaintiffs herein, is an infant under the age of ten years, and that W. F. Fisher was duly appointed such guardian *ad litem* by the Hon. J. B. Hays, judge of this court, on the twenty-eighth day of April, 1886; and that said deceased died intestate."

It is agreed by both parties that the sufficiency of the complaint is to be determined by sections 191 and 192 of our code, which are as follows: "Sec. 192. When the death of a person, not being a minor, is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death." Section 191 provides that, if the deceased is a minor, the father and mother may bring the action.

The appellant argues that the complaint is bad in that it does not allege whether the deceased was a minor or major. He claims, in terms, that the question is not whether there is a cause of action in the abstract, but whether the facts stated constitute a cause of action in favor of plaintiffs. We are not prepared to concede the correctness of appellant's position. We think the question is: 1. Whether there is a cause of action; and, 2. Whether the plaintiffs are the proper parties. There can be no doubt that they are the parties directly interested in the action. The appellant claims that whether they are the proper parties to bring the action under the code depends upon whether the deceased was a minor or major, and that that is not shown by the complaint. It seems that such omission, if such exists, would cause only an uncertainty, which under our code is a distinct

cause of demurrer. Such an objection does not go to the substantive cause of action, and we think cannot be taken advantage of under a general demurrer. (*Blanc v. Klumpke,* 29 Cal. 156; *Slattery v. Hall,* 43 Cal. 191.)

In *Jamison v. King,* 50 Cal. 136, the defendant demurred to the complaint on the ground that it was ambiguous, unintelligible, and uncertain, in that certain facts did not appear therein. The court says: "The defendant had the right to be informed whether the plaintiff claimed that the instrument was of no effect because not delivered, or, having been delivered, that it operated only as *donatio causa mortis.* Defendants are entitled to a distinct statement of the facts by plaintiff claimed to exist. The complaint is ambiguous and uncertain, and the demurrer ought to have been sustained." So, in the case at bar, perhaps the defendant had a right to be informed as to whether the deceased was a minor or a major, in order to enable it to know whether the plaintiffs were proper parties, and, if this did not appear by the complaint, it was ambiguous and uncertain; but this defect must be specially set out in the demurrer, and cannot be taken advantage of upon the ground that the complaint does not state facts sufficient to constitute a cause of action.

The second assignment of error is that the court erred in refusing a continuance on the ground of the absence of one Braddock, a witness for defendant. An inspection of the affidavit upon which the motion for a continuance was made shows that said witness would testify that he was on the scene of the accident soon after it occurred; that said Braddock possessed special knowledge of the condition of the defendant's roadway and track at and about the point of the accident; that said witness supervised the removal of said broken rail, and personally inspected the same; that the broken end or surface showed a complete and entirely new fracture, and that the external appearance thereof gave no indication of any defect therein; and that, by reason of the special knowledge of said witness as an expert in the structure and maintenance of roadway and track of a railway, and the particular characteristics and distinguishing features of the fractures of iron and iron rail, the defendant will not be able to supply the proof, etc. The peculiarity of this affidavit, as considered in connection with appellant's argument, is that it does

not allege that said witness is an expert in any sense, or that he has any special knowledge as an expert. It does not set out that witness has any special knowledge of the condition of defendant's roadway and track at and about the point of the accident, and it nowhere alleges that he has any other special knowledge. The substantive fact desired to be proven by said witness was that the appearance of the broken rail indicated a complete and entirely new fracture, and the external appearance thereof gave no indication of any defect therein. Although for some reason the record does not show it, yet it is admitted by the attorneys in this court that the motion was overruled upon the admission by attorneys for plaintiffs that the witness would testify, if present, as is set out in the affidavit of continuance, and it was so considered at the trial. Section 364 of our code provides that upon such admission the trial must not be postponed.

The third error assigned is that the evidence does not justify the verdict, in that it does not show that the accident was the result of a broken rail, which defendant carelessly and negligently permitted to remain on the track. An inspection shows that the evidence upon this point was submitted to the jury by both plaintiffs and defendant. Its consideration was within the special province of the jury, and we see no reason to disturb their verdict.

The fourth error assigned is that the court erred in refusing to give instructions 3, 4, and 5, requested by the defendant. The foundation for these instructions is in the fact claimed by defendant that the deceased received the injury of which he died in consequence of the carelessness and negligence of a fellow-servant, both being in the employment of the defendant. There was evidence tending to show that one Sherman, station agent at Camas, a station about five miles from the scene of the accident, had received notice several hours before the accident that there was a bad place in the road five miles from said station; that his duty was to notify the proper officers of the company, that the same might be repaired, and also the conductors of passing trains, that they might guard against it; that he neglected to do so, and, in consequence of said neglect, the broken rail was not removed until after the train upon which deceased was rid-

ing was thrown from the track. It is claimed by appellant that, admitting all this, yet the agent, Sherman, was a fellow-servant of the deceased, Palmer, and that the company is not liable for the accident to Palmer resulting from the carelessness or negligence of his fellow-servant, Sherman. Palmer was a carpenter, and had no relations or connection with the station agent, Sherman. It is admitted by appellant that Sherman's duties were the same as a train-dispatcher, as far as they relate to the case at bar. The importance and applicability of said instructions depend upon the legal proposition that Palmer and Sherman were fellow-servants, in the sense that the one cannot recover for injuries resulting from the carelessness of the other.

The general proposition that an employer is exempt from responsibility, where injury results to one servant from carelessness or negligence of another, is now said to be well settled. (Cooley on Torts, 642.) "There seems, however, to be a strong disposition to hold that the rule does not apply where, at the time of the injury, the servant injured was under the general direction and control of another, who was intrusted with duties of a higher grade, and from whose negligence the injury resulted." (Cooley on Torts, 543.) We think such was the relation of the deceased, Palmer, to the station agent, Sherman, and the question for us to determine is whether said rule of law should apply to such a case.

The authorities cited by the respective attorneys in their arguments constitute an able collation of adjudicated cases bearing upon this question. The weight of such authorities, considered by their number, seems to be in favor of the doctrine that the employer is exempt from liability where the injury results to one servant through the carelessness of another, without regard to the connection which the servants have with each other. Opposed to this view, however, is a smaller number of cases from high authorities, which hold that the employer is not exempt from such liability where employees are injured through the negligence of officers and agents who are invested with a controlling or superior duty in the care of the business in which the servant is engaged. (*Hough v. Railway Co.*, 100 U. S. 213.)

In the case at bar the agent, Sherman, represented the defend-
ant at the station where he was located. It was his duty to pre-
vent accident by warning the conductor of the passing train of
the bad place in the track, and to cause the broken rail to have
been removed, and a sound one put in its place, before a train
should pass over it. The deceased was employed as a carpenter
on the road, in a department wholly disconnected with that in
which the agent, Sherman, was employed.

After a careful examination of the authorities, we feel bound
to adopt the doctrine enunciated by the supreme court of the
United States, whose decisions are controlling upon all terri-
torial courts. In the case of *Railway Co. v. Ross,* 112 U. S. 377,
5 Sup. Ct. Rep. 184, the principle is established that, where an
agent is clothed with the control and management of a distinct
department, the company is liable to an employee injured by
the carelessness of such agent. Under this authority we think
that the deceased, Palmer, was not a fellow-servant of the agent,
Sherman. Both were employees of defendant, but in entirely
distinct departments of labor. In this view the said instructions
were irrelevant and misleading, and properly refused.

The sixth instruction asked by defendant, and refused, is to
the effect that the deceased is bound by the conditions of a cer-
tain pass, designated in appellant's brief as a "gang pass," upon
which he and other workmen were riding when the accident oc-
curred. The pass was between different parties than those inter-
ested in this action. The decesed had never signed it, nor as-
sented to its conditions, and we think the defendant not in a
condition to avoid liability upon the conditions of a pass issued
by the Union Pacific Railway to one Barraclaugh. We think the
pass no defense to the action, and that this · instruction was
properly refused.

The only remaining assignment of error which we deem it
necessary to consider is that of irregularity in the proceedings of
the jury and adverse party. The affidavit of P. L. Williams in
support of this assignment, among other things, says "that
William Mester was a juror in the trial of the cause; that dur-
ing said trial he was engaged in the business of saloon keeping
at Blackfoot, where the court was sitting; that, as affiant is
informed and verily believes, W. F. Fisher, father of one of the

plaintiffs in the action, and grandfather to the other plaintiff, Alfred Perle Palmer, for several days before the said trial began, and during all the time it was in progress, was a frequent and liberal patron of said saloon, and that during the progress of said trial, and especially during the evenings and nights of the said twenty-seventh and twenty-eighth days of May aforesaid, treated and entertained in said saloon large numbers of his friends and acquaintances; and, as affiant is informed and believes, that during said evenings different members of the jury impaneled to try said cause drank liquor in said saloon with the said Fisher, at his expense; and that during a portion of the time that said Fisher was so in said saloon on the evening last aforesaid, and treating and entertaining the said persons, the said Mester was present, and waited upon and assisted in waiting upon the said Fisher and his guests and friends; that during one of the said nights, near the hour of 2 o'clock A. M., as he is informed and believes, he was awakened from sleep in the hotel by the approach of a noisy, tumultuous, and boisterous crowd of men, coming from the direction of said saloon, some of whom were talking loudly, some singing, some one playing a banjo, and distinctly, above the din and uproar, affiant could distinguish the voice of said Fisher." To this affidavit the said Fisher replies in a counter-affidavit, and alleges that for six years prior thereto he had frequently patronized said saloon; that his reason for so doing was that said Mester kept the best liquor in town, and that on one or two occasions during said trial he drank at the bar of said Mester, and treated some of his friends; but denies that during said trial he treated any member of said jury, or drank with any of them, or that said Mester waited on him at said bar during said trial. Mr. Fisher does not deny that he patronized said saloon, or that said Mester and other members of the jury were present on such occasions, as alleged in the affidavit of said Williams.

We are unable to say what effect this liberal and conspicuous patronage during the trial may have had upon the mind of the juror whose bar he was patronizing. It is not necessary for us to find that it had effect upon the verdict in order to sustain this assignment of error as to irregularities of an adverse party. It is enough to find that it was calculated so to do. It is per-

haps impossible for the juror himself to appreciate what influence this patronage may have had upon his mind.

In *McDaniels v. McDaniels,* 40 Vt. 374, 94 Am. Dec. 408, the court says: "There is no practicable method to so analyze the mental operations of the jurors as to determine whether, in point of fact, the verdict would have been the same if the trial had been conducted, as both parties had a right to expect, according to law, and upon the evidence in court. The court set aside the verdict in justice to themselves as well as the defendants: that the trial may be conducted fairly, so that the verdict, when rendered, may be entitled to the respect of both parties, and the confidence of the court."

In *Cottle v. Cottle,* 6 Greenl. 140, 19 Am. Dec. 200, quoted in Hayne on New Trial and Appeal, section 48, the court says: "In case of an alleged attempt to influence a jury, it may be useful for a party to learn that a good cause may be injured, but cannot be promoted, by conduct of this sort, and to the public generally to know that it will be tolerated in no case whatever."

In *Cilley v. Bartlett,* 19 N. H. 324, where statements were made within hearing of one of the jurors, by a party without knowing that the juror was present, the court says: "There will be no security for the proper administration of justice if a party, while his case is on trial, can be permitted to make statements denouncing witnesses, during adjournment, and after the jury have separated, whether he is aware of the presence of the juror or not. If he will conduct in this manner, he must take the risk of the consequences on himself. The presumption is, where jurors hear such statements, they are more or less affected by them. It is necessary that such conduct should be discountenanced, and the defendant is entitled to a new trial."

In the case at bar it is not alleged that the plaintiff Fisher made any direct attempt to influence the verdict by denouncing the opposite parties, or their witnesses, but that his generous patronage at the bar of one of the jurors was intended and calculated to influence a verdict in his favor.

In *Knight v. Inhabitants of Freeport,* 13 Mass. 217, the court says: "We cannot be too strict in guarding trials by jury from improper influence. This strictness is necessary to give due

confidence to parties in the results of their causes, and every one ought to know that for any, even the least, intermeddling with jurors a verdict will always be set aside."

In Thompson and Merriam on Juries, 406, the practice is stated as follows: "Where the successful party to a suit is shown to have attempted by improper means to influence the verdict in his favor by corrupting or intimidating particular jurors, or arousing prejudice in their minds by undue hospitalities or civilities, the verdict will be set aside on the grounds of public policy, without reference, and without considering whether the attempt was successful or not."

These authorities establish the practice that, whenever the adverse party is guilty of conduct calculated to influence a verdict afterward rendered in his favor, a new trial will be granted as a matter of public policy, and to secure a pure administration of justice. What effect the conduct of the party in the case at bar may have had upon the juror it may be impossible to determine. He was pursuing an occupation authorized by law, and if Mr. Fisher frequented his place of business, and expended liberal sums of money in the entertainment of his friends, with his partner in business, and in his presence, or to the knowledge of the juror and other jurymen, as is alleged, and not denied by Mr. Fisher, the court will not attempt to calculate its influence upon the verdict. Such conduct is entirely reprehensible, as an attempt to corrupt the administration of justice. The party thus attempting to interfere with the trial of causes is not only guilty of contempt of court, and liable to punishment therefor, but he cannot be allowed to profit by a verdict in his favor procured under such corrupting influences.

We find no error in the law occurring at the trial, but, on the ground of irregularity by and in behalf of the party in whose favor the verdict was rendered, the judgment is reversed, and the cause remanded for a new trial.

Broderick, J., concurring.

Hays, C. J., expressing no opinion.