Steven A. **RINKER**, Plaintiff-Appellee,

v.

**COUNTY OF NAPA**, City of Napa, City of Calistoga, City of St. Helena and Randall Fitt, Defendants-Appellants.

Steven A. **RINKER**, Plaintiff-Appellant,

v.

**COUNTY OF NAPA**, City of Napa, City of Calistoga, City of St. Helena and Randall Fitt, Defendants-Appellees.

Nos. 82–4587, 82–4608.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 9, 1983.

Decided Dec. 27, 1983.

Kent Ten Brink, Mandel, Kavalier & Manpearl, Beverly Hills, Cal., for defendants-appellants.

John K. Stewart, Carroll, Burdick & McDonough, San Francisco, Cal., for plaintiff-appellee.

Before WALLACE, PREGERSON and NORRIS, Circuit Judges.

PER CURIAM:

County of Napa, Fitt and the cities of Napa and St. Helena, (Napa) appeal from a judgment in favor of Rinker for $305,000. Pursuant to stipulation, a magistrate presided over the jury trial. Rinker sued Napa under 42 U.S.C. § 1983 and pendent state claims, after he was shot in the face by Fitt during an investigation by the Napa Special Investigations Bureau at the boarding house where he rented a room. Rinker was not a target of the investigation, but was injured when Fitt entered his bedroom after knocking, opening the door and simultaneously yelling "police." Napa's appeal raises several issues and we focus only on one. We reverse for a new trial.

Napa contends that Rinker tampered with and prejudiced the jury by communicating directly with a juror in the hallway of the courthouse. During the final day of the jury's deliberations, Rinker approached juror Molnar as she returned to the jury room and told her that if she had any questions about the case, he would be glad to answer them for her. Apparently, Molnar had expressed, at *voir dire,* her fear of drugs and narcotics, although she thought she could evaluate the evidence fairly. Rinker's attorney asserts that he and a marshal of the court witnessed this communication. Molnar later told the other jurors of Rinker's approach but they decided not

to tell the trial court of the incident. Napa found out about the incident after the verdict.

Napa raised the issue on its motion for a new trial, arguing that a presumption of prejudice was raised by this event and not properly rebutted. The trial court, after hearing some argument, concluded Rinker's comment "was stupid," and agreed that it created a presumption of prejudice. He found, however, generally relying on *United States v. Armstrong*, 654 F.2d 1328 (9th Cir.1981), *cert. denied*, 454 U.S. 1157, 102 S.Ct. 1032, 71 L.Ed.2d 315 (1982) (*Armstrong*), that a new trial was not warranted. We reverse because we find the presumption of prejudice not rebutted.

 Any unauthorized communication between a party or an interested third person and a juror creates a rebuttable presumption of prejudice. *Armstrong*, 654 F.2d at 1332 (harassing phone calls to juror's home); *United States v. Harry Barfield Co.*, 359 F.2d 120 (5th Cir.1966) (president of defendant corporation approached jurors in elevator); *Remmer v. United States*, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954) (attempt to bribe juror). Rebuttal requires a strong contrary showing. Therefore, such communications, even if only "possibly prejudicial," can only be acceptable where "their harmlessness is made to appear," *Mattox v. United States*, 146 U.S. 140, 150, 13 S.Ct. 50, 53, 36 L.Ed. 917 (1892), after an investigation by the trial court.

The trial court considered an affidavit from juror Molnar disclaiming any influence, heard short arguments from counsel and recognized a presumption of prejudice, but took no new evidence. He held, however, "from all the facts for this case" that he did not "think it created any prejudice in the jury's deliberation" because Rinker's conduct was not "the type of conduct that would attempt to intimidate a juror into violating *his or her state of mind to come to* a verdict in favor of [Rinker]."

 Unarguably, great deference is granted the trial court in reviewing decisions on jury incidents, *Armstrong*, 654 F.2d

at 1332, and the trial court has great leeway in determining the extent of evidentiary hearings and the like where there are allegations of jury irregularity. *United States v. Barrett*, 703 F.2d 1076, 1083 (9th Cir.1983); *United States v. Hendrix*, 549 F.2d 1225, 1227 (9th Cir.), *cert. denied*, 434 U.S. 818, 98 S.Ct. 58, 54 L.Ed.2d 74 (1977).

More than possible intimidation, however, must be considered in evaluating jury prejudice here. The harm inherent in deliberate contact or communication can take the form of subtly creating juror empathy with the party and reflecting poorly on the jury system. *United States v. Harry Barfield Co.*, 359 F.2d at 124. Therefore, the juror's affidavit stating that she was not affected is not dispositive although she might sincerely believe she was not influenced by what the trial court characterized as an odd or stupid attempt by Rinker. *Id.* at 123.

 The trial court relied on *Armstrong* in finding the presumption rebutted. Although *Armstrong* is a criminal case, "the integrity of the jury system is no less to be desired in civil cases." *United States v. Harry Barfield Co.*, 359 F.2d at 124. However, *Armstrong* involved neither a direct contact by a party nor communication on the merits, as does the instant case. Given the added fact that "[i]n questions about jury incidents, we are ultimately not so concerned with their nature as with the prejudice they may have worked on the fairness of the defendant's trial," *Armstrong*, 654 F.2d at 1332; *see also United States v. Klee*, 494 F.2d 394 (9th Cir.), *cert. denied*, 419 U.S. 835, 95 S.Ct. 62, 42 L.Ed.2d 61 (1974), we conclude that the question of prejudicial effect deserved more consideration.

This is especially true given the other circumstances in this case. First, the presumption of prejudice here was bolstered by the cumulative prejudicial effect of Rinker's misconduct followed by the jurors' misconduct in deciding not to bring the issue to the trial court's attention. Second, by Rinker's counsel's own representation, it appears that both he, an officer of the court, and a United States Marshal witnessed the

misconduct of Rinker and never advised the magistrate. As a result, the trial court could not consider the incident's fresh impression on the participants. Third, regardless whether Rinker intended to intimidate Molnar, he did approach and attempt to influence a juror.

Because we find grounds for reversal on the issue of jury tampering, we do not reach the other issues which were raised by Napa.

REVERSED AND REMANDED.