771 P.2d 54

**Richard L. ROLL, Plaintiff–Appellant,**

v.

**CITY OF MIDDLETON, a municipal corporation; Alice M. Lanning, individually and in her capacity as Mayor of the City of Middleton, Idaho; Joe Gunics, Jack Jones, Curtis Kessler and Lloyd F. Bowen, each individually and in their respective official capacities as the City Council of the City of Middleton; and Gerald Aldrich, individually and in his official capacity as Superintendent of Public Works of the City of Middleton, Defendants–Respondents.**

No. 16760.

Court of Appeals of Idaho.

March 9, 1989.

Rehearing Denied March 9, 1989.

Richard L. Roll, pro se.

David L. Whitney and Ronald P. Rainey (Alexanderson, Davis, Rainey, Whitney & Kerrick), Caldwell, for defendants-respondents.

## SUBSTITUTE OPINION

The Court's prior opinion dated November 4, 1988, is hereby withdrawn.

BURNETT, Judge.

This is an employment termination case involving a public employee. The principal issue is whether a jury verdict in favor of the employer should be set aside for juror misconduct. The district judge said no, and he denied the employee's motion for a new trial. Today we vacate the judge's order and remand the case for reconsideration of the motion. We also offer guidance on other issues, in the event a new trial is granted.

I

In 1975 Richard Roll was hired by the City of Middleton as a general laborer. During his employment, the City adopted and distributed to its employees an "Employment Policy Statement." The document enunciated certain grounds for which an employee could be terminated. Roll subsequently engaged in conduct which the City deemed to violate the policy statement. Roll's conduct included (1) reporting late for work on a number of occasions; (2) failing to appear for work on several other occasions, ostensibly because of illness; and (3) borrowing city-owned equipment for personal use, without authorization. In 1981 the City Council voted to terminate Roll's employment on all three grounds.

Roll sued for damages. His complaint alleged breach of contract, "tortious termination" of employment, and intentional infliction of emotional distress. Upon the City's motion, the district court entered partial summary judgment against Roll's claims of "tortious termination" and intentional infliction of emotional distress. The court also dismissed the breach of contract claim with respect to all defendants except the City. The partial summary judgment was certified as final under I.R.C.P. 54(b). Roll did not appeal.

The claims having been narrowed to breach of contract by the City, the case

went to trial. On the issue of Roll's tardiness at work, the evidence was conflicting. On the issue of his alleged failure to appear for work, the evidence tended to show that he had conformed to the City's regulations governing sick leave. Finally, on the issue of Roll's use of municipal equipment for personal purposes, the evidence indicated that he had received his supervisor's permission.

The jury returned a verdict on special interrogatories. By a vote of ten members, the jury found that a contract of employment had existed between Roll and the City, and that the contract allowed Roll to be terminated only for good cause. Consequently, Roll was not an employee "at will." However, the jury also found that good cause existed for terminating his employment. The jury was not asked to specify which ground(s) for termination constituted the good cause. Roll moved for a new trial—not attacking the verdict directly, but alleging that the jury's deliberations had been tainted by extraneous information. The motion was based upon the following provisions of I.R.C.P. 59(a):

A new trial may be granted to all or any of the parties and on all or part of the issues in an action for any of the following reasons:

(1) Irregularity in the proceedings of the court, jury or adverse party or any order of the court or abuse of discretion by which either party was prevented from having a fair trial.

(2) Misconduct of the jury.

. . . .

Roll supported his motion with affidavits of three jurors, two of whom had refused to sign the verdict. These affiants stated that during the jury deliberations, one of the jurors (whom we will call Mrs. K) reported discussing the case with her son, who told her that he was familiar with the litigation and that Roll had lost an earlier appeal in the Idaho Supreme Court.[1] In response to these affidavits, the City filed ten counter-affidavits. Eight of the jurors who had signed the verdict said they did not remember hearing Mrs. K's remarks and, in any event, that such remarks did not affect their votes on the verdict. A ninth juror, who had executed one of the affidavits submitted by Roll, said in a supplementary affidavit that her vote in favor of the verdict had not been affected by Mrs. K's remarks. The tenth juror, Mrs. K, denied having any improper discussion with her son or making the alleged comments to other jurors.

A hearing was conducted on Roll's motion for a new trial. The district judge considered the arguments of counsel and examined the jurors' affidavits. No jurors testified. Counsel for the City contended that a new trial should be denied unless the judge found it probable that Mrs. K's alleged misconduct had resulted in prejudice. At the conclusion of the hearing, the judge declared from the bench that the case on its merits had been "very close," and that "the jury could have reached two verdicts in this case, . . . both of [which] were reasonable." The judge then stated that he would "assume" the jury had followed his general instruction to disregard extraneous information. Implicitly finding that such information had been communicated to the jury, the judge focused on whether prejudice had occurred. He concluded that it had not. He explained that his conclusion was "not based on what the jurors might say," but was based on his impression "from all the facts and circumstances and from being present at the trial, that the jurors . . . were not improperly influenced by the comments of [Mrs. K]." Later, the judge signed a written order denying the motion for a new trial and reiterating that "the injection of an alleged improper statement by a juror during deliberations did not prejudice the jury deliberations or resulting verdict. . . ." This appeal followed.

## II

■ The general standard for reviewing the grant or denial of a new trial under

---

1. Roll did, in fact, receive an adverse decision on a claim for unemployment benefits. *See Roll v. City of Middleton,* 105 Idaho 22, 665 P.2d 721 (1983). The City has not contended in the present appeal that the outcome of the former case has any claim-preclusive or issue-preclusive effect here.

I.R.C.P. 59(a) is well settled. The trial court's decision will be upheld unless the judge has abused his discretion. *E.g., Quick v. Crane,* 111 Idaho 759, 727 P.2d 1187 (1986). However, as in other discretion-exercising functions, the trial court's authority is not boundless. In determining whether such discretion has been properly exercised, we conduct a multi-tiered inquiry. We ask (1) whether the lower court rightly perceived the issue as one of discretion; (2) whether the court acted within the outer boundaries of its discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by an exercise of reason. *Associates Northwest, Inc. v. Beets,* 112 Idaho 603 ⁷²³ P.2d 824 (Ct.App. 1987). In this case, our analysis centers on the second query—whether the trial judge acted consistently with legal standards governing his discretionary ruling.

### A

For nearly a century in Idaho, a new trial could not be granted upon the ground of jury misconduct unless the jurors had reached their verdict by chance. *See, e.g., Dawson v. Eldredge,* 84 Idaho 331, 372 P.2d 414 (1962) (applying former I.C. § 10–602, now repealed). Until 1985, I.R. C.P. 59(a)(2) juxtaposed a broad reference to "misconduct of the jury" with a more particular reference to verdicts produced "by a resort to the determination of chance...." In *Black v. Reynolds,* 109

Idaho 277, 707 P.2d 388 (1985), our Supreme Court construed this juxtaposition to mean that the phrase "misconduct of the jury" was limited by the language which followed. Thus, Idaho practice generally conformed to the common law prohibition against impeachment of jury verdicts. *See generally McDonald v. Pless,* 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915).

In 1985, however, our Supreme Court deleted the restrictive language of I.R.C.P. 59(a), leaving no limitation in the rule upon the kind of "misconduct" that could result in a new trial. This broadening of Rule 59(a) was partially offset by concurrent adoption of the Idaho Rules of Evidence in 1985. Rule 606(b), I.R.E., has placed a practical limitation upon the "irregularit[ies]" under I.R.C.P. 59(a)(1), or jury "misconduct" under I.R.C.P. 59(a)(2), for which a new trial can be granted. It bars jurors from giving evidence concerning their mental processes or deliberations, except that jurors may identify any "extraneous prejudicial information," any "outside influence," or any "resort to chance."[2] In the present case, the parties presented affidavits falling within the "extraneous prejudicial information" exception.[3] As we have noted, however, the judge ultimately concluded that no prejudice had occurred.

### B

■ Consequently, we must decide whether the district judge applied the proper legal standard when making his determi-

---

**2.** Rule 606(b) provides in its entirety as follows: *Inquiry to validity of verdict or indictment.* Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes, but a juror may testify on the questions whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror and may be questioned about or may execute an affida-

vit on the issue of whether or not the jury determined any issue by resort to chance. The background of the rule, and of its federal counterpart, is summarized in REPORT OF IDAHO STATE BAR EVIDENCE COMMITTEE, C 606 (1984).

**3.** As noted in Rule 606(b), the limitation upon juror testimony applies to juror affidavits as well. As we later explain in this opinion, the rule was violated by those portions of the City's affidavits in which nine jurors averred that their voting had not been affected by extraneous information. However, we make this point only as guidance on remand, not as a basis for our decision today, because the judge disavowed any reliance on the jurors' statements and because the affidavits were presented without objection under the rule.

nation on prejudice. In determining that prejudice had not occurred, the judge apparently adopted a standard of actual prejudice. As we shall now explain, we believe the proper test is whether prejudice reasonably could have occurred.

Because new trials for jury misconduct were severely restricted in Idaho until 1985, we have no body of case law in this state defining the proper standard of prejudice. However, our Supreme Court has addressed the subject in the context of other irregularities affecting jury verdicts. In a case where a litigant engaged in conduct calculated to influence the jury, our Territorial Supreme Court held that the conduct warranted a new trial and that the Court would "not attempt to calculate its influence upon the verdict." *Palmer v. Utah and Northern Railway Co.*, 2 Idaho 315, 324, 13 P. 425, 430 (1887). More recently, in a case where a communication between judge and jury improperly occurred off the record, our Supreme Court characterized the error as reversible unless it were shown that the communication "could not have had any effect" upon the verdict. *Rueth v. State*, 100 Idaho 203, 209, 596 P.2d 75, 81 (1978).

By declining to require a determination of actual prejudice, our Supreme Court has followed an approach similar to that currently adopted by the federal courts in cases where juries have been exposed to extraneous information or other improper influences. These courts generally have held that a new trial should be ordered if the trial judge finds that the extraneous information or improper influence reasonably could have resulted in prejudice. *E.g., Haley v. Blue Ridge Transfer Co., Inc.*, 802 F.2d 1532, 1538 (4th Cir.1986) ("reasonable possibility" of prejudice); *Owen v. Duckworth*, 727 F.2d 643, 646 (7th Cir. 1984) (referring to "likely" prejudice, but citing cases which have adopted the "reasonable possibility" standard); *Rinker v. County of Napa*, 724 F.2d 1352, 1354 (9th Cir.1983) ("possibly prejudicial"). *Compare Krause v. Rhodes*, 570 F.2d 563, 567–69 (6th Cir.1978) (new trial should be ordered for "possible" prejudice *unless* record shows "entire absence of any influ-

ence on the verdict or the probability that such influence existed"); *United States v. Renteria*, 625 F.2d 1279 (5th Cir.1980) (holding simply that if extraneous material appears on its face to be prejudicial, reversal is automatic).

Accordingly, we hold that the proper standard is whether prejudice reasonably could have occurred, rather than whether prejudice actually has occurred. Our holding rests not only on the cases cited, but also on two additional considerations. First, the extreme rigor of an actual prejudice test would severely restrict the availability of relief for misconduct, thereby diminishing public confidence in the jury system and eroding the fundamental principle that a "verdict must be based upon the evidence developed at the trial." *United States v. Howard*, 506 F.2d 865, 867 (5th Cir.1975) (quoting *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961)). Second, Rule 606(b), I.R.E., precludes a full inquiry into actual prejudice. As mentioned above, Rule 606(b) bars jurors from giving evidence concerning their mental processes. Because jurors cannot be questioned as to whether they were in fact prejudiced by extraneous information, the trial judge must determine whether the information reasonably could have produced prejudice, when evaluated in light of all the events and the evidence at trial.

## C

■ It has been suggested by some federal courts that this determination begins with a rebuttable presumption of prejudice. A typical expression appears in *United States v. Bassler*, 651 F.2d 600, 603 (8th Cir.), *cert. denied, sub nom Sprecher v. United States*, 454 U.S. 944, 102 S.Ct. 485, 70 L.Ed.2d 254 (1981):

Because [federal] Rule 606(b) precludes the district court from investigating the subjective effect of any extrinsic material on the jurors, whether such effects might be shown to affirm or negate the conclusion of actual prejudice, a presumption of prejudice is created and the

burden is on the government to prove harmlessness.

*Accord, e.g., Owen v. Duckworth, supra; Rinker v. County of Napa, supra; United States v. Castello,* 526 F.Supp. 847 (W.D. Texas 1981).

These cases appear to be the progeny of *Remmer v. United States,* 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954), in which the Supreme Court characterized as "presumptively prejudicial" the attempted bribing of a juror. The Court recently employed similar language in *Smith v. Phillips,* 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982), where a state prisoner, petitioning for a writ of habeas corpus, sought a new trial because one of the jurors had applied for a job in the prosecutor's office. However, neither *Remmer* nor *Smith* held that such a presumption was required under Rule 606(b). Indeed, *Remmer* antedated the Federal Rules of Evidence, and *Smith* did not discuss the rules.[4]

Such a presumption might temper the harshness of an actual prejudice standard; but we are not convinced that the presumption is necessary, or even useful, where the standard is whether prejudice reasonably could have occurred, and the evidence on prejudice is restricted by Rule 606(b). As we have explained, the rule precludes an inquiry into the jurors' mental processes. It requires the trial judge evaluate the likelihood of prejudice by drawing an inference from all the events and evidence at trial. We do not see how the task of choosing an inference is aided by overlaying the issue with the verbal gloss of a presumption. If the judge draws an inference consistent with the presumption, the presumption is superfluous. Conversely, if the judge draws an inference contrary to the presumption, the presumption is rebutted and carries no evidentiary weight. *See,* I.R.E. 301; *Bongiovi v. Jamison,* 110 Idaho 734, 718 P.2d 1172 (1986) (adopting "bubble-bursting" theory of factual presumptions).

We believe it is unnecessary for Idaho trial judges in every case to engage in the semantic torture of erecting a "straw man" presumption and then proceeding to knock it down, or prop it up, by the choice of an inference.[5] It is sufficient for the judge simply to determine whether prejudice reasonably could have occurred.[6] In making

---

4. If not read carefully, *Remmer* and *Smith* could generate confusion regarding the standard of prejudice in criminal cases. Both of them refer to "actual bias" rather than to a "reasonable possibility" of prejudice as articulated in the lower federal courts. However, when "actual bias" is tempered by a presumption of prejudice and by the exceptionally rigorous burden of showing that error is harmless in criminal cases, the resulting standard, in effect, is whether prejudice reasonably could have occurred.

5. The federal courts have not always engaged in this tortuous process. Some courts have made no mention of a rebuttable presumption in analyzing the question of prejudice. *See e.g., United States v. Marques,* 600 F.2d 742 (9th Cir.1979); *United States v. Duncan,* 598 F.2d 839 (4th Cir. 1979). One commentator has summarized the federal cases by saying that "[a] presumption *often* comes to the aid of the moving party and the court, since *many kinds* of misconduct are considered presumptively prejudicial, especially in criminal but also *sometimes* in civil cases." Mueller, *Jurors' Impeachment of Verdicts and Indictments in Federal Court Under Rule 606(b),* 57 NEBRASKA L.REV. 920, 963–64 (1978). The vagaries of the federal approach are illustrated in *Haley v. Blue Ridge Transfer Co., Inc., supra,*

where the Fourth Circuit said the presumption is recognized in cases where "jurors have been exposed to unauthorized, extraneous information that is of sufficient prejudicial magnitude." 802 F.2d at 1535. In other words, prejudice is presumed where substantial prejudice appears. Needless to say, this is not a useful concept.

6. At least one federal court has noted that this determination, based upon a choice of inferences, is more akin to fact-finding than to an exercise of discretion. Accordingly, the court has suggested that such a determination be reviewed under the "clear error" standard rather than the "abuse of discretion" standard. *See Owen v. Duckworth, supra.* This suggestion has some merit; however, under Idaho law, we will continue to view the issue as one of discretion. As noted above, the Idaho Supreme Court has held that rulings on motions for new trials generally are vested in the discretion of the trial court. Moreover, the federal version of the "clear error" standard envisions greater appellate court intervention in trial court functions than does the Idaho version, even though the literal language is the same. *Compare,* I.R.C.P. 52(a) and F.R.C.P. 52(a); *see generally, Standards of Appellate Review in State and Federal Courts,* IDAHO APPELLATE HANDBOOK Section 3.3.2 (Idaho Law Foundation 1985).

this determination, due regard will be given to the policy of assuring that jury verdicts are based upon the evidence at trial, not upon extraneous information or improper influences.[7]

### D

■ Here, as we have mentioned, the trial judge implicitly found that extraneous information had reached the jury. However, the judge denied a new trial because he believed that no prejudice actually had resulted. He did not apply the test of whether prejudice reasonably could have resulted. When a judge exercising a discretionary function does not apply the legal standard governing his discretionary choices, the proper appellate response is to vacate his decision and to remand the case for reconsideration. *E.g., Kunzler v. Kunzler,* 109 Idaho 350, 707 P.2d 461 (Ct. App.1985). The judge then can make a reasoned decision in light of the proper standard.

Therefore, the order denying Roll's motion for a new trial is vacated, and this case is remanded for reconsideration of the motion. As guidance upon remand, we instruct the judge to distinguish between those parts of the jurors' affidavits which would be admissible in evidence under I.R. E. 606(b), and those parts which would not. The judge should consider those parts which identify the extraneous information and the circumstances under which it

reached some or all of the jurors. However, the judge may not consider the affiants' statements as to whether the extraneous information affected their votes on the verdict.

### III

As additional guidance on remand, we will address two other issues presented by Roll. Each issue could become significant if a new trial is granted.

■ First, Roll asks us to overturn the partial summary judgment which eliminated several of his claims and dismissed all defendants except the City. We cannot do so. As noted at the outset of our opinion, this partial summary judgment was certified under I.R.C.P. 54(b). Upon certification, the judgment became final and immediately appealable. I.A.R. 11(a)(3). In order to vest appellate jurisdiction for reviewing such a judgment, a notice of appeal must be filed within forty-two days of the certification. I.A.R. 14(a) and 21. *State v. Tucker,* 103 Idaho 885, 655 P.2d 92 (Ct. App.1982). Because no timely notice of appeal was filed in this case, we have no jurisdiction to review the partial summary judgment.

■ Second, Roll argues that if any one of the three reasons given by the City for terminated his employment was ultimately found to be unsupported by the evidence,

---

7. We are aware of a broad suggestion, contained in a recent Supreme Court opinion, that a new trial will not be granted for error, even if prejudice reasonably could have occurred, unless it *also* appears that a different result would be "probable" at a retrial. *See Soria v. Sierra Pacific Airlines, Inc.,* 111 Idaho 594, 608, 726 P.2d 706, 720 (1986). Probability of a different result is a rigorous standard traditionally applied to motions for new trials based on newly discovered evidence. *See* I.R.C.P. 59(a)(4). With due respect to our Supreme Court, we have questioned the extension of this standard beyond Rule 59(a)(4) under the rubric of "harmless error." *See Davidson v. Beco Corp.,* 112 Idaho 560, 67–72, 733 P.2d 781, 788–93 (Ct.App. 1986), *partially overruled on other grounds,* 114 Idaho 107, 753 P.2d 1253 (1987) (on petition for review).

In any event, we note that *Soria* did not explicitly mandate that the probability of a differ-

ent result be employed as the standard for appellate review of orders granting or denying new trials under *every* subsection of Rule 59(a). Indeed, the Supreme Court recently has decided cases under subsection (5) without invoking the *Soria* language. *See Smallwood v. Dick,* 114 Idaho 860, 761 P.2d 1212 (1988); *Quick v. Crane,* 111 Idaho 759, 727 P.2d 1187 (1986) (a case virtually contemporaneous with *Soria*). *Compare Nations v. Bonner Building Supply,* 113 Idaho 568, 746 P.2d 1027 (Ct.App.1987) (applying probability-of-different-result standard to a motion for new trial under subsection (6), where the verdict is inconsistent with the evidence). Accordingly, we do not determine, nor do we require trial judges to determine, the probability of a different result before granting a new trial where a jury has received extraneous information that reasonably could have resulted in prejudice.

his discharge should be deemed wrongful. The district judge disagreed. So do we.

Roll cites *Rosecrans v. Intermountain Soap and Chemical Co.*, 100 Idaho 785, 605 P.2d 963 (1980), for the proposition that when an employer and employee enter a contract which limits potential reasons for discharge, the employer's notice of termination must supply the "real" reasons for the termination. This proposition may be correct, but it does not appear in *Rosecrans*. More importantly, it does not support Roll's position in the present case. *Rosecrans* simply says that "when the employee establishes that he has been terminated in violation of the employment contract, the employer has the burden of proving the existence of good cause for the termination." 100 Idaho at 787, 605 P.2d at 965. A similar statement of law can be found in *Lucas v. Whittaker Corp.*, 470 F.2d 326 (10th Cir.1972), cited in *Rosecrans:* "Although it is generally held that an employee claiming breach of an employment contract has the burden of proving the employer's breach ... when the employee establishes the breach, the burden is on the employer to show justification." 470 F.2d at 328 (citations omitted).

To determine whether a justification exists, the terms of the contract must be studied. Here, it appears that a contract existed and that the terms of the "Employment Policy Statement" had become a part of the contract. The "Employment Policy Statement" specifically provided, *inter alia,* as follows,

> An employee may be dismissed or suspended for *any* of the following causes which occur during the period of employment: ...
>
> 7. ... improper use or unlawful conversion of city property, equipment, or funds....
>
> 11. Habitual pattern of failure to report for duty at the assigned time and place.
>
> 12. Habitual improper use of sick leave privileges.... [Emphasis added.]

Thus, if it were determined on remand that Roll had engaged in "any" of the behavior listed in the "Employment Policy State-

ment," a jury could find the discharge justified—unless, of course, the contract elsewhere placed limitations or conditions upon the City's choice of remedies.

For the reasons explained above, the order denying Roll's motion for a new trial is vacated. The case is remanded for proceedings consistent with this opinion. Costs to appellant, Roll. No attorney fees on appeal.

WALTERS, C.J., and SWANSTROM, J., concur.