861 P.2d 1241

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Howard VAUGHN, Defendant–Appellant.**

No. 19271.

Court of Appeals of Idaho.

Sept. 8, 1993.

Petition for Review Denied Nov. 23, 1993.

Beer & Cain, Boise, for defendant-appellant. Stephen L. Beer argued.

Larry EchoHawk, Atty. Gen. and Michael J. Kane, Deputy Atty. Gen., argued for plaintiff-respondent.

SWANSTROM, Judge, Pro Tem.

Howard Vaughn was found guilty by a jury of three counts of lewd conduct with a minor. I.C. § 18–1508. The district court sentenced Vaughn to a unified ten-year period of incarceration with a fixed five-year term, on each count, to be served concurrently. Vaughn appeals, contending that several errors were committed which warrant a reversal of his conviction on the three counts, or alternatively, justify a remand order for a new trial. We affirm the judgment of conviction.

Vaughn raises the following issues: Did the trial court err by refusing to instruct the jury that evidence of prior inconsistent statements could be used only for impeachment purposes and not substantively? Were Vaughn's rights under the Confrontation Clause violated? Did the trial court abuse its discretion in denying Vaughn's motion to dismiss at the end of the state's case in chief and his motions for acquittal and for new trial? Did the trial court err by denying Vaughn's motion for a preliminary hearing?

The unique circumstance leading to many of these issues on appeal is that, before trial, the victim recanted her story. The state duly notified the defense of its intent to use at trial the victim's prior inconsistent statements pursuant to I.R.E. 803(24) (other exceptions to hearsay rule). The state called the victim to testify, at which time she said that her earlier statements were false and that Vaughn had not committed the acts with which he was charged.

The victim and her mother lived with Vaughn at the time of the events leading to the charges. The victim's mother worked for Vaughn in his print shop. The state alleged that during the summer of 1989, Vaughn committed two separate acts of lewd conduct with the victim. The state also alleged that Vaughn committed a third act in February, 1990. At the time of these events, the victim was thirteen years old.

While at school on February 9, 1990, the victim cried and was upset. Three classmates attempted to comfort her and asked her why she was crying. The classmates kept asking the victim specific questions in an attempt to uncover the source of her sadness. After learning that the person bothering the victim was Vaughn, one classmate asked the victim "what, is he [Vaughn] molesting you?" The classmates testified that she responded in the affirmative, and continued to cry. Following the victim's request, the classmates promised not to tell anyone what they had learned.

A few days later, with the victim's permission, another classmate informed the school secretary that a "friend" had been sexually molested. The secretary convinced her to reveal the victim's name. That same day the secretary talked with the victim in the presence of the classmate, and the victim told her that Vaughn had

molested her. Thereafter, the school personnel contacted law enforcement and health and welfare authorities. The victim was placed into temporary foster care. That these discussions with her classmates and the school secretary occurred was not disputed at trial; however, the victim testified that she had fabricated the allegation and that Vaughn had not molested her.

The state introduced into evidence and played for the jury a videotape interview of the victim conducted by Sirona Knowlton, a health and welfare employee. This interview occurred on February 16, seven days after the victim had told her classmates that Vaughn had molested her. However, on February 22, the victim called her mother and Knowlton into school where she recanted. She has since maintained that Vaughn did not molest her and that the initial allegations were fabricated.

According to the victim's testimony, she responded to her classmate's question whether Vaughn was molesting her in a sarcastic manner, "yeah, that's it." However, all three classmates testified that the victim's limited responses to the questions were not sarcastic, and that she was "crying really hard." Although at trial the victim denied having been sexually molested by Vaughn, she attributed the former allegations that Vaughn had molested her to anger she had felt towards her natural father. The victim was unable to explain why she had alleged that Vaughn had molested her when she was upset with her natural father.

The state presented evidence from Dr. Brus, a pediatrician, who examined the victim on February 27 and on March 1, 1990. Dr. Brus testified that his visual examination revealed that the victim's hymenal membrane was abnormally large for a thirteen-year-old girl and had two lacerations in it. Dr. Brus also testified that in his opinion, the victim's vagina had been subjected to either digital or penile penetration on at least one occasion and quite possibly more than once.

The defense presented expert testimony from an obstetrician/gynecologist, Dr. Schaefer, who had examined the victim within a month before the trial. Unlike Dr. Brus, Dr. Schaefer testified that he had found nothing abnormal in his examination of the victim. A psychologist, Dr. Sanford, also testified on behalf of Vaughn. He stated that the victim did not reflect any symptoms that are commonly associated with victims of sexual molestation. Vaughn testified on his own behalf and denied the charges.

After Vaughn had been indicted by a grand jury but before arraignment, he filed a motion for a preliminary hearing and for preparation of transcripts of the grand jury proceedings. The district court granted the motion to prepare the grand jury transcripts but denied the motion for a preliminary hearing. A jury trial was held February 4 through 7, 1991. At the conclusion of the state's case in chief, Vaughn moved for dismissal, contending that the evidence was not sufficient to sustain any of the charges. The court denied the motion. On February 9, the jury returned guilty verdicts on all three counts. Vaughn filed post-trial motions for acquittal and for a new trial. The court denied these motions as well.

**The Trial Court's Refusal to Instruct Jury that Out-of-Court Prior Inconsistent Statements Were to be Considered for Impeachment Purposes Only.**

■ The first issue is whether the district court erred in refusing to give Vaughn's proffered jury instruction on prior inconsistent statements. Vaughn's proposed instruction, which is derived from Cal.Jury Instructions 2.13, read:

Evidence that on some former occasion witnesses not a party to this action made a statement or statements that were inconsistent with [their] testimony in this trial, may be considered by you only for the limited purpose of testing the credibility of a witness. The testimony of

such inconsistent statements must not be considered by you as evidence of the truth of the facts as stated by the witness on such one occasion.

This instruction was offered at the close of the defense's case while the district court and counsel discussed the final jury instructions.

The district court denied Vaughn's proffered instruction, ruling that the videotape of the victim and her statements to her friends had been admitted without objection and as substantive evidence, not solely for purposes of impeachment. The court refused to retroactively limit the use of this evidence.

On appeal, Vaughn relies upon *State v. Drapeau*, 97 Idaho 685, 551 P.2d 972 (1976), for the principle that evidence of prior inconsistent statements may only be used for impeachment purposes, and not as substantive evidence. The key language of *Drapeau* is:

In this state where a prior inconsistent statement of a witness *is introduced at trial as impeaching evidence*, it is admitted solely for the purpose of attacking the credibility of the witness, and not as substantive evidence of its truth.

*Drapeau*, 97 Idaho at 688, 551 P.2d at 975 (emphasis added). In *Drapeau*, the Supreme Court noted, however, that contrary authority exists. *Id.* n. 2; *see generally* Andrea G. Nadel, Annotation, *Prior Inconsistent Statements as Evidence*, 30 A.L.R.4th 414 (1984).

The state maintains that the district court correctly denied the proffered instruction because Vaughn had not objected to the admissibility or requested a limiting instruction at the time the videotape and other live testimony was admitted. The state asserts that an instruction, such as that requested by Vaughn, would only have confused the jury because it would have come hours and even days after the applicable testimony.

Idaho Rule of Evidence 105, which is identical to the federal rule, provides:

When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly.

Because the rules are the same, federal case law is relevant and helpful. *State v. Carrasco*, 117 Idaho 295, 298, 787 P.2d 281, 284 (1990). "A request for a limiting instruction should be specific and timely." *United States v. Thirion*, 813 F.2d 146, 155 (8th Cir.1987). The limiting instruction requested in *Thirion* was made at the conclusion of direct examination and cross-examinations by two co-defendants and immediately prior to the requesting party's cross-examination. The eighth circuit court held that the request may have been specific enough if it had come "immediately after the offending testimony." *Thirion*, 813 F.2d at 156. The court stated that similarly, the requested instruction would have been timely if it had specifically identified the testimony to be limited. The court concluded that the requested limiting instruction was neither timely nor specific and affirmed the trial court's denial of the instruction.

The state notified Vaughn in writing that it intended to introduce the videotape testimony of the victim as is required under I.R.E. 803(24). The state thus put Vaughn on notice that it would seek to admit this evidence for more than just the purpose of impeachment. Vaughn's failure to object to the testimony or to request a limiting instruction at the time the evidence was offered prevented the district court from ruling upon this question at that crucial time. This failure also made any showing by the state of the videotape's "equivalent circumstantial guarantees of trustworthiness," and the other requirements under I.R.E. 803(24), unnecessary. Had the evidence come in for the purpose of impeachment, it would have been admitted for the sole purpose of attacking the victim's credibility consistent with *Drapeau*. However,

the rule quoted above from *Drapeau* is inapplicable where the admission of the evidence was not limited to the purpose of impeachment. Vaughn's request for a limiting instruction, made after the state and the defense had presented their evidence and at the time the court and counsel were preparing the final jury instructions, came too late and was less specific than that made in *Thirion*. We hold that the court's ruling denying Vaughn's proposed limiting instruction was not erroneous.

### Denial of Defendant's Motion for Acquittal Under Idaho Criminal Rule 29(a).

We now turn to Vaughn's issue of alleged error with regard to the district court's denial of his motion for judgment of acquittal. The test to be applied by the district court in a motion for acquittal is "whether the evidence is sufficient to sustain a conviction of the offense or offenses charged." *State v. Holder*, 100 Idaho 129, 131, 594 P.2d 639, 641 (1979). We independently review the record to determine whether a reasonable mind would conclude that the evidence was sufficient to show that the state had proven its case beyond a reasonable doubt with respect to each material element. *State v. Printz*, 115 Idaho 566, 768 P.2d 829 (Ct.App.1989). All reasonable inferences will be taken in the state's favor. *Id.*

As noted earlier, when the state rested its case Vaughn moved to dismiss the indictment, contending that the state had failed to prove every element of each of the three counts charged in the indictment.[1] On appeal, Vaughn contends that if the court had properly treated the out-of-court prior inconsistent statements as impeachment evidence only, and not as substantive evidence to prove the crimes, the remaining evidence was insufficient to establish guilt. Thus, Vaughn ties this issue to his first one.

When the motion to dismiss was presented, Vaughn did not argue or contend that the "impeachment" evidence had to be excluded from the court's consideration of whether there was sufficient evidence to submit the case to the jury. That argument was made only when Vaughn requested his limiting instruction after all of the evidence was in. The motion to dismiss essentially asked the court to look at all of the evidence which had come into the trial as substantive evidence to prove the three charges. Having reviewed the testimony and exhibits introduced in the state's case, we conclude that the evidence was sufficient to submit the case to the jury. Accordingly, we hold that the trial court did not err in denying the defendant's motion at the close of the state's case.

Vaughn renewed his motion for judgment of acquittal after the verdict but before sentencing. *See* I.C.R. 29(c). This time he argued that his requested instruction should have been given and that the victim's out-of-court statements should have been considered by the court and jury only for purposes of impeaching her trial testimony. He argued that the remaining substantive evidence which was admissible on the question of guilt was not sufficient to prove any of the charges.

We have already addressed Vaughn's arguments in our discussion of the first issue. Because we agree that the victim's out-of-court statements were offered and admitted into evidence without objection and without limitation, the statements could be considered by the jury as substantive evidence to prove the charged crimes. Accordingly, we hold that the district court did not err in denying Vaughn's renewed motion for a judgment of acquittal.

### The Right of Confrontation.

The third issue presented is whether admitting the evidence of the victim's prior

---

1. Such a motion is effectively a motion for judgment of acquittal pursuant to I.C.R. 29. *See State v. Huggins*, 103 Idaho 422, 426, 648 P.2d 1135, 1339 (Ct.App.1982), *citing State v. Holder*, 100 Idaho 129, 130, 594 P.2d 639, 640 (1979).

inconsistent statements violated Vaughn's right under the Confrontation Clause contained in the Sixth Amendment to the United States Constitution. Vaughn cites *State v. Wright,* 116 Idaho 382, 775 P.2d 1224 (1989), *aff'd, Idaho v. Wright,* 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), for authority that the admissions in this case violated his right to confrontation. The evidence in *Wright* consisted of testimony by a pediatrician as to what a three-year-old girl had told him in an interview, which testimony was admitted over objection. The girl did not testify. The United States Supreme Court affirmed the Idaho Supreme Court's holding that the defendant's right to confront her accuser had been denied because the state had failed to show that the younger victim's hearsay statements made to the pediatrician contained adequate "particularized guarantees of trustworthiness." *Idaho v. Wright,* 497 U.S. at 827, 110 S.Ct. at 3153.

In this case, unlike *Wright,* the victim, whose prior statements were alleged to have violated Vaughn's right under the Confrontation Clause, testified at the trial. In this respect the case is similar to the seminal case of *California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). In *Green,* the Supreme Court held that the Confrontation Clause does not require inconsistent statements, which were concededly made, to be excluded where the declarant testifies at trial and is subject to full cross-examination regarding both versions. 399 U.S. at 164, 90 S.Ct. at 1938. The Court reasoned in part:

> the inability to cross-examine the witness at the time he made his prior statement cannot easily be shown to be of crucial significance as long as the defendant is assured of full and effective cross-examination at the time of trial. The most successful cross-examination at the time the prior statement was made could hardly hope to accomplish more than has already been accomplished by the fact that the witness is now telling a different, inconsistent story, and—in this

case—one that is favorable to the defendant.

399 U.S. at 159, 90 S.Ct. at 1935. We hold that the admission of the victim's initial statements, which she made to other people regarding the sexual acts with Vaughn, did not violate Vaughn's right under the Confrontation Clause.

**The Jury Deliberations; Motion for New Trial.**

Next, Vaughn raises issues surrounding the deliberations of the jury. Vaughn contends that the district court erroneously denied his post-trial motions for new trial and for acquittal. In support of his motion for new trial, Vaughn submitted affidavits from three jurors, each of which stated at least in part, that it was his or her impression that the jury was obligated to reach a verdict and that a "hung" jury was unacceptable. Vaughn also asserts that the bailiff told members of the jury that the judge could be out of town over the weekend, and this constituted an informal "dynamite charge." Vaughn also contends that the court should have granted his motion for acquittal on these same grounds, as well as on the basis that the prior inconsistent statement evidence was improperly admitted as substantive evidence and that the court erred by refusing to give a limiting jury instruction.

The case was submitted to the jury for deliberation at 5:07 p.m. on Thursday, February 7, 1991. After an hour and ten-minute dinner break, the jury continued its deliberations until 10:30 p.m., at which time one juror asked the court how long the jury must deliberate before the court would declare the jury to be "hung" or unable to reach a decision. The court responded that it would defer answering the question until it appeared that the jury might become hung. The court recessed and the jury returned February 8 for additional deliberation. After another full day of deliberation, the jury was still unable to reach a verdict. Another question came from the jury asking that the alternate be substitut-

ed for one juror who had a "pressing matter" at home. The jury did not raise any question regarding the prospect of becoming "hung" on February 8. The court declined to replace that juror, recessed at 6:10 p.m. and reconvened at 9:00 a.m. on Saturday, February 9. The jury rendered its verdicts of guilty at 10:50 a.m. on February 9.

 A decision to grant or deny a new trial is committed to the discretion of the trial court. *State v. Scoggins*, 110 Idaho 380, 716 P.2d 1152 (1986), *cert. denied*, 479 U.S. 989, 107 S.Ct. 582, 93 L.Ed.2d 585 (1986). We analyze the question of whether a court abused its discretion by conducting a three-part inquiry: (a) did the trial court rightly perceive the issue as one of discretion, (b) did the trial court act within the outer boundaries of its discretion and consistently with applicable legal standards, and (c) did the court reach its conclusion by an exercise of reason? *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

The district court explicitly recognized that Vaughn's motion for new trial presented the court with a discretionary decision. At the hearing on Vaughn's motion, the court refused to strike the affidavits from the record, as the state had requested. However, the court ruled that it would disregard all of the information in the affidavits relating to each juror's mental processes and impressions that the court would not accept a "hung" jury. The court stated that it would only consider the information in "the affidavits which indicate that statements were made by the bailiff, ... for the purpose of showing whether any outside influence was [im]properly brought to bear upon any juror." The court correctly limited the information in the affidavits that it would consider under I.R.E. 606(b) because "[a] jury's verdict cannot be impeached by affidavit or otherwise except where the verdict was determined by chance or where extraneous prejudicial information or outside influence

may be identified." *State v. Burnside*, 115 Idaho 882, 886, 771 P.2d 546, 550 (Ct.App. 1989) *citing Roll v. City of Middleton*, 115 Idaho 833, 771 P.2d 54 (Ct.App.1989). The court also recognized the correct standard to apply in this determination, namely, "whether prejudice reasonably could have occurred, rather than whether prejudice actually has occurred." *Roll*, 115 Idaho at 837, 771 P.2d at 58. Disregarding the jurors' impressions contained in the affidavits, and in light of the thorough jury instructions and responses to the two questions from the jury, the court found that prejudice could not reasonably have occurred.

Vaughn contends that because the district court did not *sua sponte* address the issue of how long the jury would be retained before the court would declare it to be "hung" on February 8, it left the jury with the impression that the jury must reach a verdict. The language the court used and the nature of the jury's communication with the court on February 8 indicate otherwise. The court indicated that the question of how long the jury would be allowed to deliberate before the court ruled that it was unable to reach a verdict was premature and that there is no set time line. The court did not state that it would automatically examine the question the following day, rather the court stated that it would do so "if it appears that's—that you might become a hung jury." The only communication from the jury on February 8 was whether a juror could be excused and be replaced by the alternate. There was no indication that the jury was unable to reach a verdict or that deliberations had come to a halt. As the court stated below, the question from the jury about replacing a juror with the alternate implied that deliberations were continuing. The court also stated that in its view, it never said the jury could not become "hung," nor gave that impression. We agree.

 The jury instructions given stated in part "[t]he verdict must express the indi-

vidual opinion of each juror ... you should not change your conclusions you have reached just merely because one or more or all of your fellow jurors may have come to a different conclusion, or merely to bring about a unanimous verdict." Our Supreme Court has held that a jury was not entitled to a more explicit instruction on the possibility of a "hung jury" where similar jury instructions were given. *See State v. Smith*, 117 Idaho 225, 229, 786 P.2d 1127, 1131 (1990). The district court's ruling that prejudice could not reasonably have occurred is not erroneous and the decision to deny the motion for new trial did not constitute an abuse of discretion.

■ The other ground advanced in support of Vaughn's motion for new trial is whether the bailiff had improperly informed the jury, or some jurors, that the district judge could be out of town for the weekend. One juror stated that he recalled "the bailiff or another juror mentioning that the bailiff had said that we had better get a decision before Friday night for the judge could be out of town for the weekend." The district court determined that there was an issue as to whether a juror or the bailiff had stated that the judge could be out of town. The court treated the juror's statement as a subjective impression because, as the court stated, there was a question as to "whether there was a juror saying this or whether it was the bailiff saying this." The court thereby implicitly found that Vaughn had failed to identify any "prejudicial information or outside influence." The court acted within its discretion by ruling that Vaughn had failed to identify prejudicial information or outside influence.

Vaughn's motion for acquittal was based on these alleged problems with the jury deliberations and the admission of evidence of prior inconsistent statements. We have held that the prior inconsistent statement evidence was properly considered as substantive evidence. We also conclude the district court's determination that prejudice could not reasonably have occurred stemming from a belief that a verdict must absolutely be reached in the case was not in error. As stated above, in reviewing a ruling on a motion for acquittal, we independently examine the record to determine whether a reasonable person would find that there was sufficient evidence to sustain a conviction, and all reasonable inferences are taken in the nonmoving party's favor. *State v. Huggins*, n. 1, *supra*. We conclude that sufficient evidence existed to sustain the convictions, and that the court did not err by denying the motion for acquittal.

### Motion for Preliminary Hearing.

■ The final issue is whether the district court erred by denying Vaughn's motion for a preliminary hearing. Vaughn was indicted by a grand jury. Vaughn recognizes that our Supreme Court has held that, where a defendant has been indicted by a grand jury, the defendant is not afforded a right to a preliminary hearing. *State v. Edmonson*, 113 Idaho 230, 232–33, 743 P.2d 459, 461–62 (1987). Nevertheless, Vaughn contends that he should have been granted a preliminary hearing. We hold that the district court did not err in applying the rule stated by the Supreme Court in *Edmonson*, thereby refusing to grant Vaughn's motion.

### Conclusion

Vaughn failed to timely object with specificity to the testimony of prior inconsistent statements of the victim. Therefore, the district court did not err when it denied his jury instruction request which would have attempted to limit the prior inconsistent testimony to the purpose of impeachment. Vaughn's rights to confrontation were not violated where the victim was subject to complete cross-examination at trial as to both versions of her story. The trial court did not abuse its discretion in denying Vaughn's various motions. We affirm the judgment of conviction.

WALTERS, C.J., and SILAK, Acting Judge, concur.